# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6111 | **DATE** | 7/23/2003 |
| **CASE TITLE** | Wells vs. Hospital Group of Illinois, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant UHS of Delaware, Inc.'s motion to dismiss for lack of personal jurisdiction [ 9-1] is denied without prejudice. Defendant Universal Health Services, Inc. and UHS of Delaware, Inc.'s motion to dismiss the Title VII claims [11-1] is granted. Counts I, II, and III against Universal Health Services, Inc. and UHS of Delaware, Inc. are dismissed with prejudice. Defendants' motion to dismiss the § 1981 claims [7-1] is denied. Defendants are directed to file an answer to plaintiff's amended complaint by 8/12/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 4 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 2 4 2003 date docketed | 23 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/23/2003 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
JUL 2 4 2003

BARBARA F. WELLS, )
 )
    Plaintiff, )
 )
v. ) No. 02 C 6111
 ) Judge Joan H. Lefkow
HOSPITAL GROUP OF ILLINOIS, INC., )
d/b/a HARTGROVE HOSPITAL, )
UNIVERSAL HEALTH SERVICES, INC., )
UHS OF DELAWARE, INC., )
SUZANNE BARRY, and ELLEN NORTH, )
 )
    Defendants. )
 )

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara F. Wells ("Wells") has filed a five-count complaint against defendants Hospital Group of Illinois, Inc., d/b/a Hartgrove Hospital ("Hartgrove"), Universal Health Services, Inc. ("UHS"), UHS of Delaware, Inc. ("UHS Delaware"), Suzanne Barry ("Barry") and Ellen North ("North"). Plaintiff alleges Hartgrove, UHS and UHS Delaware are liable for a hostile work environment and discrimination on account of her race (white) as well as retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Counts I-III). Further, plaintiff alleges defendants are liable for discrimination and retaliation under 42 U.S.C. § 1981 (Counts IV-V). This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f). Presently before the court are several motions to dismiss.

23

# FACTS

The facts alleged in plaintiff's complaint, taken as true, are as follows: Wells, a "Caucasian" registered nurse, started working for Hartgrove in November 1994. At some unspecified point, Wells began to date Edmond Rivers ("Rivers"), an African-American youth counselor at Hartgrove.

On October 10, 2000, Barry, who is Hartgrove's CEO, promoted Wells to the position of Nurse Manager of the Adolescent Services Program. Wells accepted the position because Barry promised to combine two existing, independent adolescent divisions into one unit under Wells' supervision. Rivers, however, worked in one of the divisions that was supposed to come under Wells' control. Nonetheless, Rivers reported to that division's head nurse and not to Wells. Wells also did not have ability to promote, discipline or fire Rivers. Instead, Hartgrove used an administrative committee to perform these functions.

Two months after Wells' promotion, North, Hartgrove's Human Resources Director, told Wells that her relationship with Rivers was a "conflict of interest." Specifically, North told Wells that her supervision over Rivers violated company policy. In response, Wells examined the employee handbook. She learned that Hartgrove policy prevented only "co-habitants" and "blood relatives" from having a supervisory relationship at work. She could find no policy that prohibited supervisory relationships between employees who dated outside of the workplace but did not live together.

Over the next several months, Barry and North "harassed" Wells about her relationship with Rivers, stating that she must relinquish her position as Nurse Manager. Wells consistently informed Barry and North that she was not in violation of Hartgrove policy because she did not

2

live with Rivers nor were they blood relatives. In response, North would state, "Well, you know what I mean."

Wells also would point out to Barry and North that many African-American Hartgrove employees violated the "conflict of interest" policy. Nevertheless, neither Barry nor North could explain why Hartgrove did not enforce this policy with respect to those employees.

In March 2001, Barry ordered Wells to divide her program into more than one unit and to assign Rivers to a unit outside of her supervision. Wells refused and reiterated that she agreed to be Nurse Manager based on Barry's assurance that she would be the sole manager of a unified program. Further, in a final attempt to keep her job, Wells requested a waiver of the purported conflict of interest. In response, Barry informed Wells that "corporate" backed her decision to divide the program and refused to grant Wells a waiver.

On April 20, 2001, Wells resigned from her position. Wells then returned to her status as "per-diem" nurse, the position that she held prior to her promotion as Nurse Manager.

On April 23, 2001, Wells filed a formal discrimination complaint with Hartgrove based on her constructive discharge as Nurse Manager. In response, defendants terminated Wells on May 21, 2001.

## DISCUSSION

Before the court is UHS's motion to dismiss for lack of personal jurisdiction, UHS's and UHS Delaware's motion to dismiss the Title VII claims, and defendants' motion to dismiss the § 1981 claims.

A.     UHS's motion to dismiss for lack of personal jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), UHS moves to dismiss itself as a defendant, arguing that this court lacks personal jurisdiction over it. A court has personal jurisdiction over a defendant either by way of "general" or "specific" jurisdiction. *See Watchworks, Inc.* v. *Total Time, Inc.*, No. 01 C 5711, 2002 WL 424631, at *4-5 (N.D. Ill. Mar. 19, 2002). Briefly stated, "general" personal jurisdiction exists where the defendant has sufficient minimum contacts with the forum state either because it is domiciled in the forum state or it has continuous and systematic general business contacts with the forum state. *Id.* at *4. "Specific" personal jurisdiction exists where a defendant has availed itself of the privilege of conducting specific activities in the forum state, thereby invoking the benefits and protection of its laws. *Id.* at *5 (citing cases). In deciding a motion to dismiss for lack of personal jurisdiction, the court must take as true any jurisdictional allegations asserted by the plaintiff in the complaint; the defendant, however, may controvert these allegations with affidavits. *Turnock* v. *Cope*, 816 F.2d 332, 333 (7th Cir. 1987). The court must resolve any conflicts of fact in favor of the plaintiff. *John Walker & Sons, Ltd.* v. *DeMert & Doughtery, Inc. et al.*, 821 F.2d 399, 402 (7th Cir. 1987), citing *Deluxe Ice Cream Co.* v. *R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir. 1984).

UHS submits the affidavit of its general counsel, Bruce R. Gilbert ("Gilbert"), as proof that UHS is not subject to personal jurisdiction. (Def. Mem. Ex. A.) Gilbert attests that UHS is a Delaware corporation with its principal place of business in Pennsylvania. Gilbert, however, acknowledges that UHS is "affiliated" with UHS Delaware and Hartgrove but otherwise fails to provide more facts regarding this affiliation. Further, Gilbert attests that UHS is a "separate and

distinct corporation" from those defendants and that it does not direct, manage or participate in the employment decisions of Hartgrove. (*Id.* ¶¶ 8-9.)

In response, plaintiff asserts that she alleges sufficient facts to show personal jurisdiction and, if not, that the court allow her to conduct further discovery on this issue. Primarily, plaintiff asserts that she can show UHS is subject to liability and thus she can show UHS is subject to personal jurisdiction. According to plaintiff, UHS is liable under the "integrated enterprise" test, citing *Sargent* v. *McGrath*, 685 F. Supp. 1087, 1089 (E.D. Wis. 1988). Under this test, the parent company is liable for the acts of its subsidiary if there are interrelated operations, common management, centralized control of labor relations and common ownership. *Id.* Plaintiff argues that she meets this test because UHS is affiliated with UHS Delaware and Hartgrove and Barry informed her that "corporate" backed her decision to remove plaintiff from her position.

Nevertheless, the integrated enterprise test no longer applies to employment discrimination claims. *Worth* v. *Tyer*, 276 F.3d 249, 260 (7th Cir. 2002) ("[T]his Circuit no longer applies the 'integrated enterprise' test to Title VII claims[,]" citing *Papa* v. *Katy Ind., Inc.*, 166 F.3d 937, 942 (7th Cir. 1999)). Rather, the Seventh Circuit relies on the "single employer" test to show employer liability for employment discrimination claims. *See Worth*, 276 F.3d at 260. Under this test, the affiliated employer forfeits its limited liability if (1) the plaintiff "pierces the corporate veil," (2) the affiliated employer acts with the express purpose of avoiding liability under the discrimination laws, (3) the affiliated employer directs the discriminatory act, practice, or policy in question or (4) the affiliated corporation is liable based on the misdeeds of its predecessor through successor liability. *Id.*

Nonetheless, although plaintiff applies the wrong test, she demonstrates that she is entitled to discovery on the personal jurisdiction issue. Plaintiff alleges that "corporate" was involved in the conduct under attack in her lawsuit. Plaintiff does not have access to information that would establish what Barry meant by "corporate." Generally, courts grant discovery on the jurisdictional issue if the plaintiff can show that the factual record is at least ambiguous or unclear on the issue. *See, e.g., Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 242 (N.D. Ind. 1998) (citing cases). For these reasons, UHS's motion to dismiss for lack of personal jurisdiction will be denied without prejudice.

**B.     UHS's and UHS Delaware's motion to dismiss the Title VII claims**

UHS and UHS Delaware next move to dismiss plaintiff's Title VII claims under Federal Rule of Civil Procedure 12(b)(6). On a Rule 12(b)(6) motion, the court accepts as true the alleged facts, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999).

UHS and UHS Delaware argue that the court should dismiss the Title VII claims against them because plaintiff failed to name these defendants in her charge filed with the Equal Employment Opportunity Commission ("EEOC"). "Ordinarily, a party not named in an EEOC charge may not be sued under Title VII." *Schnellbaecher v. Basking Clothing Co.*, 887 F.2d 124, 126 (7th Cir.1989). There is an exception, referred to as the *"Eggleston* exception," to this general rule where "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation

proceedings aimed at voluntary compliance." *Id.* at 127, quoting *Eggleston* v. *Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981); *Olsen* v. *Marshall & Ilsley Corp.*, 267 F.3d 597, 604 (7th Cir. 2001), citing *Schnellbaecher*. Plaintiff acknowledges that she does not name UHS and UHS Delaware in her EEOC charge. Rather, she argues that she meets the "*Eggleston* exception" and that the court also should take into account that she filed her charge *pro se* and that UHS and UHS Delaware are the alter-ego of Hartgrove.

Plainly, plaintiff cannot prevail on this issue. Plaintiff misconstrues the *Eggleston* exception because she relies on the balancing test from *Glus* v. *C.M. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. Cir. 1980), *vacated on other grounds*, 451 U.S. 935 (1981). Although the court in *Eggleston*, 657 F.2d at 908, outlined this balancing test, it does not apply in this Circuit. *Accord, Bright* v. *Roadway Servs., Inc.*, 846 F. Supp. 693, 696 n.3 (N.D. Ill. 1994) (stating that the "*Eggleston* 'notice' analysis, and not the *Glus* [balancing] test controls the standard by which courts in this circuit determine whether a party not named in an EEOC charge is amenable to suit."). Moreover, although the court liberally construes *pro se* charges, it is well-established that plaintiff must show that she alluded to the unnamed party in the charge such that the unnamed party had notice of the claim and an opportunity to conciliate on its own behalf. *See, e.g., Olsen*, 267 F.3d at 604 ("Under the law of this circuit, a parent organization not named in the plaintiff's EEOC charge must be dismissed from the suit unless the plaintiff can show that the parent had notice of the claim against it, as opposed to its subsidiary, and had an opportunity to conciliate on its own behalf."); *Bright*, 846 F. Supp. at 697 (citing relevant case law). Plaintiff does not do so here and thus she does not meet the *Eggleston* exception. For these reasons, the court will grant UHS's and UHS Delaware's motion to dismiss plaintiff's Title VII claims against them.

C.  **Defendants' motion to dismiss the § 1981 claims**

Defendants move to dismiss plaintiff's § 1981 claims under Rule 12(b)(6). Section 1981 states, in relevant part, "All persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Further, section 1981(b) defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The parties agree that plaintiff was an "at-will" employee when she worked at Hartgrove.[1] Based on plaintiff's status, the parties dispute whether at-will employment is sufficient to show a contractual relationship for an employment discrimination claim under § 1981.

The Seventh Circuit and the Supreme Court have not ruled on this issue although the Seventh Circuit has addressed it in dicta. In *McKnight* v. *Gen. Motors Corp.*, 908 F.2d 104, 109 (7th Cir. 1990), the Seventh Circuit stated that at-will employment may provide a sufficient contractual relationship to state a § 1981 claim. The court, however, held that an employee could not pursue a § 1981 claim for discriminatory conduct after the employee and employer entered into a contract. In so holding, *McKnight* relied on *Patterson* v. *McLean Credit Union*, 491 U.S. 164 (1989). Subsequently, section 12 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(b), overruled *Patterson*.

---

[1]"Parties to an employment at-will contract may terminate it for a good reason, a bad reason, or no reason at all[.]" *Beraha* v. *Baxter Health Care Corp.*, 956 F.2d 1436, 1444 (7th Cir. 1992) (internal citations and quotations omitted). Illinois law presumes that an employment contract is at-will. *Tucker* v. *Cassidy, Schade & Gloor*, No. 99 C 4001, 2000 WL 968828, at *4 (N.D. Ill. July 13, 2000).

8

Thereafter, in *Gonzalez* v. *Ingersol Mill Machinery Co.*, 133 F.3d 1025 (7th Cir. 1998), the court acknowledged its dicta in *McKnight* but concluded that the overall validity of *McKnight* was questionable given its reliance on *Patterson*. Thus, the court chose not to follow *McKnight*'s analysis on at-will employment. Rather, it concluded that at-will employment is insufficient to show a contractual relationship under § 1981. *Gonzalez*, 133 F.3d at 1034 ("Arguably, since [the plaintiff] was an employee at-will, and did not have any contractual rights regarding the term of her employment, she cannot claim that she was discriminated against with respect to [the defendant's] layoff."). Furthermore, the *Gonzalez* court recognized that post-*Patterson* cases held that at-will employees had no contractual relationship with their employer under § 1981, citing the New York federal district court cases *Moorer* v. *Grumman Aerospace Corp.*, 964 F. Supp. 665, 675-76 (E.D.N.Y. 1997), *Moscovitz* v. *Brown*, 850 F. Supp. 1185, 1192 (S.D.N.Y. 1994), and *Askew* v. *May Merchandising Corp.*, No. 87-CIV-7835, 1991 WL 24390, at *5-6 (S.D.N.Y. Feb. 20, 1991).

Since *Gonzalez*, other courts of appeals have held that an at-will employee may state a § 1981 employment discrimination claim. For example, in *Fadeyi* v. *Planned Parenthood Ass'n of Lubbock, Inc.*, the Fifth Circuit reasoned that the *Patterson* decision "implicitly conceded that an at-will employee may maintain a cause of action under § 1981." 160 F.3d 1048, 1050 (5th Cir. 1998), citing *Patterson*, 491 U.S. at 178, 185. The *Fadeyi* court determined that the legislative history of the 1981(b) amendment showed that Congress intended to expand the reach of § 1981. Thus, it concluded that federal law supports a finding that a plaintiff's at-will status does not

weigh in a § 1981 analysis. *Fadeyi*, 160 F.3d at 1050;[2] *cf. Lauture* v. *Int'l Bus. Machines Corp.*, 216 F.3d 258, 262-63 (2d Cir. 2000) ("In the context of a racial discrimination claim brought under federal law, the fact the employment was at will is simply not dispositive."). Moreover, the court relied on Texas law, the underlying state law, to hold that at-will employment is sufficient to show a contractual relationship under § 1981. *Fadeyi*, 160 F.3d at 1050, 1052. Since *Fadeyi*, other courts of appeals have followed suit based on the respective state law. *See, e.g., Skinner* v. *Maritz*, 253 F.3d 337, 340-41 (8th Cir. 2001) (relying on Missouri law); *Lauture*, 216 F.3d at 263 (relying on New York law); *Perry* v. *Woodward*, 199 F.3d 1126, 1133 (10th Cir. 1999) (relying on New Mexico law); *Spriggs* v. *Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999) (relying on Maryland law).[3]

As relevant here, defendants urge this court to follow *Gonzalez* and ignore the subsequent decisions from the other courts of appeals. Further, they argue that, should the court rely on state law, Illinois law does not support a finding that at-will employment is sufficient to demonstrate a contractual relationship under § 1981, relying on *Tucker* v. *Cassiday, Schade & Gloor*, No. 99 C

---

[2]Specifically, the Fifth Circuit reasoned that the § 1981(b) amendment

> reflects the intent of Congress to protect minorities in their employment relationships. . . . For example, the report of the House of Judiciary Committee stated that the 1991 amendments were "designed to restore and strengthen civil rights laws that ban discrimination in employment. . . . By restoring the broad scope of Section 1981, Congress will ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race." To hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees, especially those who, by virtue of working for small businesses, are not protected by Title VII.

160 F.3d at 1050.

[3]Based on the above discourse, there has been understandable disagreement between the district courts in this Circuit when faced with the issue of whether at-will employment is sufficient to show a contractual relationship under § 1981. *See, e.g., Daniels* v. *Fed. Reserve Bank of Chicago*, No. 98 C 1186, 2003 WL 21542496, at *1 (N.D. Ill. July 3, 2003) (citing the litany of district court cases).

4001, 2000 WL 968828, at *4 (N.D. Ill. July 13, 2000). *But see Raid v. 520 S. Michigan Ave. Assoc. Ltd*, 78 F. Supp. 2d 748, 756-57 (N.D. Ill. 1999).

Although *Gonzalez* was decided after *McKnight*, both cases offer only dicta. *Accord, Daniels v. Nationwide Ins.*, No. 99 C 0757, 1999 WL 495649, at *2 (N.D. Ill. June 28, 1999) (stating "the Seventh Circuit has expressly cautioned against reading its dicta as an inclination of its leanings" and citing *Compl. of McCarthy Bros., Co./Clark Bridge*, 83 F.3d 821, 833 (7th Cir. 1996)). Nevertheless, even if the court should assign more weight to *Gonzalez* because it is more recent than *McKnight*, it still must consider the subsequent decisions from the other courts of appeals. Specifically, since the Seventh Circuit decided *Gonzalez*, the Second Circuit abrogated the district court cases on which *Gonzalez* relies. *Lauture*, 216 F.3d at 259-60. As such, should this issue come before the Seventh Circuit, it is likely that it will address these subsequent decisions. *Cf. Staples v. Pepsi Cola Gen. Bottlers, Inc.*, 312 F.3d 294, 298 n.3 (7th Cir. 2002) (noting the other courts of appeals' decisions); *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987) (". . . the responsibility for maintaining the law's uniformity is a responsibility of appellate rather than trial judges . . ."). Thus, the court finds unavailing defendants' argument that it ignore the decisions from the other courts of appeals. As such, the court next turns to defendants' argument that at-will employment does not support a contractual relationship under Illinois law.

This court finds two district court cases that address this issue, *Tucker*, 2000 WL 968828, at *4, and *Raid*, 78 F. Supp. 2d at 755. Both cases rely on different case law and offer opposite outcomes. In *Tucker*, 2000 WL 968828, at *4, the court stated that at-will relationships are not contractual ones under Illinois law and thus an at-will employee cannot maintain a § 1981 claim

11

for employment discrimination. As support, it cited *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444-45 (7th Cir. 1992), for the proposition that an implied covenant of good faith and fair dealing applies to all contracts in Illinois but cannot be read to change the nature of an at-will relationship, and *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 489, 505 N.E.2d 314, 318 (1987), for the proposition that enforceable contractual rights are created only if contract-formation requirements are met.

In *Raid*, 78 F. Supp. 2d at 755, the court held that that Illinois law provides that at-will employment is sufficient to show a contractual relationship under § 1981. In so holding, the court recognized that Illinois law allows an at-will employee to pursue a tort claim for intentional interference with a contractual relationship, citing *Kemper v. Worcester*, 106 Ill. App. 3d 121, 124-25, 435 N.E.2d 827, 830 (5th Dist. 1982) ("the employment agreement between plaintiffs and the bank, albeit terminable at will, constituted a sufficient relationship or agreement upon which to base a cause of action for tortious interference with advantageous or contractual relations."), as well as a tort claim for retaliatory discharge when the plaintiff's termination violates public policy, citing *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981).

The case law cited in *Raid* is more pertinent than the case law cited in *Tucker*. Further, in addition to the cases cited in *Raid*, *Fellhauer v. City of Genova*, 142 Ill. 2d 495, 511-12, 568 N.E.2d 870 877-78 (1991), provides persuasive force as well. In that case, the Illinois Supreme Court determined that an at-will employee may pursue a tort claim for interference with prospective economic advantage in an employment relationship (although the plaintiff failed to do so there). Of particular import, the court quoted *London Guarantee & Accident Co. v. Horn*, 206 Ill. 493, 507, 69 N.E. 526, 531 (1903), for the proposition that "where the contract is one of

12

employment, it is immaterial whether it is for a fixed period or is one which is terminable by either party at will, both parties being willing and desiring to continue the employment under that contract for an indefinite period." *Fellhauer*, 142 Ill. 2d at 512, 568 N.E.2d at 878.[4] Based on these cases, the court concludes that Illinois law supports a finding that at-will employment is sufficient to demonstrate a contractual relationship. Thus, the court holds that an at-will employee may maintain a § 1981 claim for employment discrimination.[5] Accordingly, the court will deny defendants' motion to dismiss the

§ 1981 claims.

## ORDER

The court denies UHS's motion to dismiss for lack of personal jurisdiction without prejudice [#9]. The court grants UHS's and UHS Delaware's motion to dismiss the Title VII claims [#11]. Counts I, II and III against UHS and UHS Delaware are dismissed with prejudice.

---

[4]This quotation comports with the court in *McKnight*'s reasoning that "[a] contract for employment at will may end abruptly but it is a real and continuing contract nonetheless, not a series of contracts each a day--or a minute--long." 908 F.2d at 109.

[5]Further, defendants' argument that plaintiff fails to allege a contractual relationship is unavailing. Defendants argue that plaintiff's allegations that she has a contractual relationship with Hartgrove are conclusional. They rely on *Blumenthal* v. *Murray*, 995 F. Supp. 831, 835 (N.D. Ill. 1998), where the court dismissed the plaintiff's § 1981 claim because the plaintiff's allegation that the defendants violated "his employment rights under his contract agreement" with one of the defendants was conclusional. The court determined that the plaintiff failed "to specifically allege the form of the contract." *Id.*

Based on the liberal notice pleading requirements under Rule 8, plaintiff sufficiently alleges facts from which it is reasonable to infer that she had an employment contract with Hartgrove. Specifically, plaintiff alleges that she had an employment relationship with Hartgrove (Compl. ¶ 8); defendants interfered with this relationship by committing unlawful discrimination and harassment (*Id.* ¶¶ 17-18, 20); and this conduct deprived her of rights with respect to her "contractual employment relationship" with Hartgrove (*Id.* ¶ 44).

The court denies defendants' motion to dismiss the § 1981 claims [#7]. Defendants are directed to file an answer to plaintiff's amended complaint by Tuesday, August 12, 2003.

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: July 23, 2003